## JOHN J. ROBERSON ET AL., ETC.,

## v.

## LAURA TROUTT.

1. SCHOOL—RULES OF DIRECTORS.—Whether rules adopted by school directors are reasonable or not is a question of law for the court, and is to be determined in view of the facts of each particular case.

2. INSTRUCTIONS.—As the instructions as to the teacher's negligence, cruelty and failure to observe the rules made by the directors were manifestly erroneous, the case is reversed.

APPEAL from the Circuit Court of Franklin county; the Hon. D. M. BROWNING, Judge, presiding. Opinion filed November 27, 1885.

Mr. GEORGE C. ROSS and Mr. CHARLES H. LAYMAN, for appellants.

Mr. F. M. YOUNGBLOOD, for appellee.

WILKIN, J. On the 19th of May, 1884, appellants employed appellee to teach a five months' school, commencing September 1st of that year, for which they were to pay her $30 per month. She taught until December 15th and was then discharged by appellants for negligence, cruelty and refusing to enforce the rules adopted by appellants. She was paid for the time actually taught, but claiming that her discharge was wrongful she sued for her wages for the unexpired term for which she had been employed. She had judgment before the justice of the peace, and also in the circuit court, and appellants bring the case to this court by appeal. The merits of the case involve but a single question, namely: Was the discharge of appellee justifiable?

Appellants' offered evidence in the court below to prove that appellee was negligent, cruel, and that she refused to enforce and observe the rules and regulations adopted by them for the government of the school.

Appellee controverted all of these charges, and also insisted that the rules were unreasonable and that she was not therefore bound to observe them.   These rules, so far as they are in question in this case, are as follows:

"The teacher must be prompt in attendance and hear all of the lessons in the branches named in his or her certificate.

"The teacher must hear at least four lessons from each student daily when there are not more than forty pupils in attendance.

"The teacher must teach full six hours daily, not counting the time of recesses and intermissions.   Teachers must not institute any cruel or inhuman treatment of pupils, but promptly report all incorrigibly bad conduct to at least one member of the board of directors."

Appellants asked among others the following instructions numbered seven, eight and nine, which were refused.

7.   The court instructs you that a rule by a board of school directors, requiring a teacher to teach six hours a day actual teaching is a reasonable rule; and in this case if you believe from the evidence that the directors made a rule requiring the plaintiff to teach six hours a day in actual teaching, and that she failed or refused to do so, then you should find for the defendants.

8.   That a rule of school made by a board of school directors, requiring a teacher to hear four recitations per day from each pupil is a reasonable rule; and if you find from the evidence that the directors in this case made a rule requiring the plaintiff to hear four recitations per day from each student, and that the plaintiff failed or refused to obey and carry out such rule, then your verdict should be for the defendants.

9.   That the law makes it a duty of boards of directors to adopt and enforce rules and regulations for the government of their schools; and that it is the duty of the teacher to act in conformity to such rules and regulations; and in this case, if you believe from the evidence that Laura Troutt, the plaintiff, refused to abide by such rules and regulations (if you believe from the evidence such rules were made), or that she ignored such rules and regulations, then and in such a case you should find for the defendants.

The objection urged by counsel for appellee against these instructions is, that they "ask the court to declare, as a matter of law, what is a reasonable rule of school."

This, it is said, is a question for the jury to determine. The Supreme Court ni Thompson et al. v. Beaver et al., 63 Illinois R. 357, say, "The directors undoubtedly have the power to make and cause to be enforced all reasonable rules and regulations for the government of schools in their respective districts. *What are reasonable rules* is a *question of law.*"

In the case of the Illinois Cen. R. R. Co., etc., v. Whittemore, 43 Ill. R. 420, it was held to be error to leave it to a jury to say whether a rule adopted by a railroad company for the government of its business was reasonable or not. It is there said that "the necessity of holding this to be a question of law, and therefore within the province of the court to settle, is apparent from the consideration that it is only by so holding that fixed and permanent regulations can be established."

See also C. B. & Q. R. R. Co. v. McLallen, Adm'r, 84 Ill. R. 116.

We see no difference in principle in the two classes of cases. We do not hold that the rules adopted in this case as to the hours to be taught, and the number of recitations to be heard each day, would be under all circumstances reasonable; nor that a bare failure to literally comply with them would subject a teacher to removal.

While the reasonableness of such rules is a question of law for the court, that question is to be determined in view of the facts of the particular case. In other words, the court in determining whether or not a rule of school is reasonable must take into consideration the school for which it was adopted. It was certainly the province of the court to determine whether or not these rules as applied to the school being taught by appellee were reasonable or unreasonable, and while the evidence may furnish some ground for argument as to the reasonableness of the regulations fixing school hours and the daily number of recitations, we are not prepared to hold that they are unreasonable. We think they are not. A part of

these rules are certainly perfectly proper, not only applicable to this school, but all others. That a teacher should be prompt in attendence and should not institute any cruel or inhuman treatment of pupils, would seem to be duties so plainly incumbent upon all teachers that special rules imposing them could scarcely be thought necessary.

The ninth instruction asked by appellants we think should have been given, as it announced a correct rule of law applicable to the case.

The following instructions were given at the instance of the appellee to which appellants excepted.

" That it devolves on defendants to prove by a preponderance of the evidence that the plaintiff was guilty of cruelty before they can ask a verdict at your hands."

" That the jury have nothing whatever to do with the popular clamor in the district, but the only question of importance for them is, was the plaintiff after employment guilty of negligence? And unless the weight of the testimony shows such cruelty or negligence, you should find for the plaintiff."

" The term negligence used in the statute means, the want of ordinary care and attention to the performance of a duty, and if you believe from the evidence that plaintiff exercised ordinary care and attention to her duties, she can not be guilty of negligence. You are to determine from all the evidence whether defendants have shown by a preponderance that plaintiff was guilty of cruelty or negligence, and unless the preponderance of the evidence so shows, you should find for the plaintiff."

" That the clause in the contract that if plaintiff should be discharged by defendants for the statutory causes or either of them, that she should not make any claim for the balance of the term, does not deprive her of the right of recovery simply because the directors preferred the charge of cruelty and negligence against her, on the order discharging her, but notwithstanding that clause in the contract, the defendants, before they can avoid the payment of the contract price, must show by a preponderance of the evidence that she was actually guilty of cruelty and negligence or any one

of them, and if they have failed to do this, your verdict should be for the plaintiff." These instructions are each erroneous and must have misled the jury if they were followed.

The first imposes the burthen of proof upon appellants to show *cruelty* before they can ask a verdict at the hands of the jury.

Although the jury may have believed from the evidence that appellee was negligent, or that she positively and willfully refused to observe the rules adopted for her government, still, if they followed the directions of this instruction they could not find for appellants, unless they also believed that she was guilty of cruelty. The other three instructions above make it incumbent upon appellants to prove either cruelty or negligence before they are entitled to a verdict ignoring the third charge, "failure to enforce the rules."

Three reasons were given for the discharge of appellee: negligence, cruelty and not enforcing the rules. On the trial evidence was introduced, *pro* and *con* to prove and disprove each of these distinct charges.

Appellants introduced evidence to prove that she was negligent in various ways; that she cruelly whipped one of the pupils, and that she refused to observe the rules, assigning as a reason that they were unreasonable. She denied each of the charges and introduced evidence to disprove them. It was unquestionably the province of the jury to determine whether or not the charges were true, but why one or even two of them should have been singled out and the defense made to depend solely upon them, we are unable to see. In the oral argument it was insisted by counsel for appellee that the charges of negligence and not enforcing the rules amounted to but one charge—that of negligence. It is true that a failure to enforce rules might result from negligence; but that is not the only failure here insisted upon. It is a failure resulting in part at least from a positive refusal.

No attempt whatever is made to justify the giving of the first instruction, and we are clearly of the opinion that it, as well as the other three referred to, are so manifestly errone-

ous, in view of the evidence in the case, that no logical argument can be adduced in their support.

The suppression of the deposition of the witness Lucy Dorr was, we think, under the circumstances, a matter within the discretion of the judge trying the case. It is conceded that if the award of execution by the court below is to be construed as ordering an ordinary *fi. fa.* it is error. But it is insisted that the language in the judgment, " execution is awarded," must be construed as an order for the peculiar writ mentioned in section 50, Starr & Curtis' Statutes, page 2229. We do not agree with this view. The order for the writ provided for in this section is no part of the judgment.

It may be made at any time after the rendition of the judgment, and can only be issued by the special direction of the court. The clerk could not reasonably construe the language here used as authorizing him to issue a writ commanding the appellants to pay the judgment in the manner directed in the section referred to.

This error, if the only one, might be remedied by remanding the case with directions, but we think there is manifest error in the refusal of appellants' ninth instruction, and in giving each of the above instructions on behalf of appellee.

*Reversed and remanded.*